IDA CHLORINE HARALSON ET AL v.
ATLAS TRANSIT CO., INC.

5-5492                                                465 S. W. 2d 108

Opinion delivered March 22, 1971
[Rehearing denied April 26, 1971.]

*Terral, Rawlings, Matthews & Purtle* and *John W. Cole,* for appellants.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellees.

CONLEY BYRD, Justice. The trial court directed a verdict for the appellees in this action by appellants Ida Chlorine Haralson, Gene Haralson, and Arnold Johnson, administrator of the estate of Gladys Johnson, deceased, for injuries received in a car-truck collision with a truck and trailer owned by appellee Atlas Transit Co., Inc., and operated by appellee Buddy Reese.

For reversal appellants contend that there was ample evidence to show that the driver of the truck failed to keep a proper lookout; failed to keep his vehicle under control; was driving his vehicle at an excessive speed under the circumstances; and was driving his vehicle on the wrong side of the road.

Robert Faulk, the investigating State trooper, testified that the accident occurred on Highway 167 in Grant County at approximately 6:00 A.M. on January 6, 1970. It was snowing when he received word of the accident and because of the weather it took him forty-two minutes to drive the twenty-two miles from the Markham Street interchange on Interstate 30 to the scene of the accident. The road where the accident occurred was straight, with a curve commencing a short distance to the north. He found debris right around the center line and some gas spilled on the highway.

Buddy Reese testified that he was driving the truck and trailer. He saw the reflection of lights before he saw the car. When he first saw the car it was turned crossways in the road. He knew there was a side road ahead and it looked as though the car was coming out of the side road and making a left hand turn. When he first saw the car he applied his brakes but upon determining that his trailer was sliding a foot or two to the left, he let off his

brakes. His truck had fifteen forward gears and at the time he was traveling in 13th gear at a speed of 35 to 45 miles per hour. When he first saw the car it was 35 to 45 yards from the point of impact and he was also 35 to 45 yards from the point of impact. He placed his truck in its proper lane of travel with its right front off the pavement, on the right hand shoulder at the point of impact. He estimated the stopping distance of his truck, considering the road conditions and his speed, at 150 yards. Under normal conditions he estimated the truck's stopping distance at 35 to 45 yards at the speed he was traveling.

Herbert Slyby was parked on the road side, fixing the windshield wipers on his wife's car, and witnessed the collision. He said the car, driven by Mrs. Billy Wilson, went out of control and skidded around at least one and one-half times before it collided with the truck on the truck's side of the road. He would not attempt an estimate of the truck's speed but said that it did not appear to be coming fast.

Loretta Slyby testified that she watched the car slide around into the truck in just a split second. She could not tell the jury anything about speed and distances involved.

Billy Wilson, husband of the car's driver, testified that he talked to Buddy Reese at the hospital and that Reese said he thought the car pulled out from that side road and he could have avoided the collision if he had taken the ditch. He also testified that he was familiar with the type of truck involved and in 13th gear it would run 50 to 55 miles per hour. Its minimum speed in that gear would be 50 miles per hour.

Gene Haralson testified that Buddy Reese was at the hospital. When asked if Reese made a statement, Haralson answered:

"He said he thought she had come out of that side road there by that ranch and he thought she had just lost control of it and would get back on

her side of the road. He said he could have avoided the accident. He said when he realized she had lost control of the car it was too late."

Haralson admitted that Tony and Billy Wilson were present when the statement was made.

Tony Wilson testified that he saw where the car was apparently hit first. He saw dirt, glass, mud and gasoline about twenty feet the other side of where the car came to rest.

Leslie Tannahill, a deputy sheriff, testified that when standing in the south bound lane where the curve begins one could see down the road 1416 feet.

We can find no substantial testimony in the record from which it can be inferred that the collision occurred in the north bound lane.

Without the testimony of Billy Wilson that the truck would have been going from 50 to 55 miles per hour in 13th gear, we would affirm the directed verdict. However, because we must view the testimony in the light most favorable to the party against whom a verdict is directed, we must consider his testimony without regard to its credibility. Viewed in this light, there is testimony from which the jury could find that Reese was driving the truck and trailer along a snow covered highway at a speed of 55 miles per hour; that prior to the collision Reese had seen the back ends of some cars sliding; that his visibility was 150 yards; that his stopping distance under the existing conditions at 35 to 45 miles per hour. was 150 yards; and that he did not see the car with which he collided until it was 70 to 90 yards away from him and already out of control. When this evidence is added to the statement of Reese that he could have avoided the accident by taking the ditch, we cannot say that there is no substantial evidence to show that Reese was negligent in failing to keep a lookout and in driving at an excessive speed under the circumstances.

Appellees argue, however, that the cause of the collision was the fact that the car went out of control and not any alleged negligence of appellees. Here again, we must view the evidence and the inferences in the light most favorable to the parties against whom the verdict was directed.

In Prosser, Torts, 3rd ed., Ch. 7, § 41, p. 246, it is stated:

> "The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists."

We are unwilling to say that jurors cannot conclude that there was a causal relation between the speed of the truck, and the driver's failure to see the car until it was 70 to 90 yards away and the collision with the disabled vehicle in which appellants were riding.

Reversed and remanded.